IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL J. PEARLMAN,

        Plaintiff,

vs.                                                           No. CIV 98-1160 MV/WWD

STEPHANIE GONZALES,
Secretary of State of the
State of New Mexico,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's Amended Complaint and Petition for Writ of Mandamus **[Doc. No. 1]**. The Court, having considered the moving papers, relevant law, and being otherwise fully informed, finds that the Petition is not well taken and will be **DENIED,** as explained below.

## BACKGROUND

Plaintiff Daniel Pearlman ("Pearlman"), a registered member of the Green Party, wishes to be a write-in candidate for governor for the Sate of New Mexico in the general election to be held November 3, 1998. The New Mexico Election Laws require that all those seeking to be write-in candidates file a declaration of such intent 63 days prior to the date of the election with the Secretary of State. The Secretary of State is then directed to certify all eligible write-in candidates to the various county clerks ten days prior to the election, which for this year's election would be Friday, October 23, 1998.

On September 1, 1998, 63 days prior to the election, Pearlman submitted two alternative declarations of his intent to be a writ-in candidate for governor. The first, "Declaration of Intent to be a Writ-in Candidate" did not name a running mate, while the second, "Declaration of Intent to be Joint Write-in Candidates in the General Election," named Paul Loumena as Pearlman's running mate for the position of lieutenant governor. The second declaration provided that it was "contingent and valid only if a separate write-in candidacy for Governor in general election is denied."

By letter dated September 1, 1998, and hand delivered to Pearlman, Defendant Stephanie Gonzales, Secretary of State for the State of New Mexico ("Secretary Gonzales") informed Pearlman that he would not be certified as a write-in candidate. The letter cited two reasons for the denial of certification: (1) New Mexico Election Laws require that the governor and lieutenant governor be elected on a single, joint ballot; and (2) the Green Party is now a major political party in the State of New Mexico and is required to select its nominees for governor and lieutenant governor through a primary election process.

Pearlman filed a Petition for Writ of Mandamus with the Supreme Court of New Mexico which was denied without hearing or comment on September 9, 1998. Pearlman filed a Motion for Reconsideration with the Supreme Court which was also denied without hearing or comment on September 22, 1998.

Pearlman, proceeding *pro se*, then filed the instant Complaint and Petition for Writ of Mandamus with this Court on September 28, 1998. In his petition, Pearlman asserts that the Secretary of State and her predecessor have certified write-in candidates in past elections, including at least one who was a registered member of a major political party. The Secretary of State and Attorney General were served on October 1, 1998, and filed an Answer on October 14, 1998.

# ANALYSIS

Because time is of the essence in this matter, the Court *sua sponte* has undertaken an analysis of whether the Complaint sufficiently states a claim, whether this Court has jurisdiction over the dispute, and whether, assuming the plead facts to be true, this Court is empowered to grant the relief requested. After careful consideration, the Court has determined that although Plaintiff sufficiently pleads a continuing violation of his First and Fourteenth Amendment rights, this Court is precluded by the Eleventh Amendment from granting the relief requested, which would require the Court to intervene in the State of New Mexico's gubernatorial election. Plaintiff's only available recourse is with the Supreme Court of the State of New Mexico.

## A.     The Sufficiency of the Complaint

The Complaint alleges that Secretary Gonzales, by unlawfully refusing to certify his write-in candidacy,  is currently abridging Plaintiff's federal Constitutional rights in violation of 42 U.S.C. § 1983. Leaving aside allegations which plainly fail to state a claim under section 1983[1] and construing the Complaint broadly in favor of this *pro se* litigant, the Complaint sufficiently pleads that Secretary Gonzales, acting in her official capacity but beyond the realm of her authority, is currently violating and will continue to violate Pearlman's First Amendment right to free association and his Fourteenth Amendment right to equal protection of the law. *See Briscoe v. Kusper,* 435 F.2d 1046, 1053-54 (7th Cir. 1970); *Smith v. Cherry,* 489 F.2d 1098, *cert den* 417 US 910 (7th Cir. 1973); *McCarthy v. Hardy*, 420 F.Supp. 410 (E.D. La. 1976); 66 A.L.R. Fed. 750, Actionability, Under 42 U.S.C. §

---

[1] In addition to the First and Fourteenth Amendment violations discussed in the body of this opinion, Plaintiff asserts violations of state constitutional rights. This Court has no authority to adjudicate violations of purely state created rights pursuant to section 1983. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In addition, Plaintiff cites several provisions of the U.S. Constitution which do not provide him with enforceable rights, including the guarantee of a republican form of government and the Tenth Amendment. The Court will not address these plainly insufficient claims.

1983, of Claims Arising out of Maladministration of Election (1984). He requests that this Court, pursuant to the All Writs Act, 28 U.S.C. § 1651,[2] issue a Writ of Mandamus directing Secretary Gonzales to certify his write-in candidacy.

**B.      Jurisdiction of this Court**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 only if there has been a violation of federal constitutional rights. *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir. 1980). In addition, Eleventh Amendment immunity may bar the relief requested here. Thus, the two questions presented are: (1) Has Secretary of State Gonzales violated Pearlman's First and Fourteenth Amendment Rights? and (2) If she has, is this Court nevertheless prohibited by the Eleventh Amendment from issuing a writ directing her to certify Pearlman's candidacy? These questions will be addressed in turn.

**1.      The Alleged Constitutional Violations**

Pearlman asserts that by failing to properly certify his write-in candidacy, Secretary Gonzales is violating his federal constitutional rights. This Court must determine whether (1) federally protected constitutional rights are at stake here; (2) if so, whether Secretary Gonzales' actions were appropriate; and (3) if not, whether her inappropriate actions amount to a violation of Pearlman's constitutional rights.

**a.      The Constitutional Rights at Stake**

The right to participate in the electoral process is paramount and core in a democratic system of governance. "Safeguarding the integrity of the electoral process is a fundamental task of the Constitution, and we must be keenly sensitive to signs that its validity may be impaired." *Johnson v.*

---

[2]The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

*FCC*, 829 F.2d 157, 163 (D.C. Cir. 1987). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 534-535, 11 L.Ed.2d 481 (1964)). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964).

The Supreme Court has recognized the First Amendment implications of restrictions on a candidate's eligibility to seek elected office. *Anderson v. Celebreeze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983); *Lubin v. Panish*, 415 U.S. 709, 716 (1974) ("The interests involved are not merely those of parties or individual candidates . . . . The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters."); *Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have some theoretical, correlative effect on voters."); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) ("In the present situation the state laws place burdens on two different, although overlapping, kinds of rights-the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."); *Johnson v. FCC*, 829 F.2d 157, 163 (D.C. Cir. 1987) (In *Anderson*, "[t]he Court recognized that the First Amendment right of voters to associate and to cast their votes effectively could be 'heavily burdened' if candidates were to be excluded from the ballot."); *see also Coalition for Free and Open Elections, Prohibition Party v. McElderry*, 48 F.3d 493, 497 (10th Cir. 1995); *Hagelin v. Graves*, 25 F.3d 956, 959 (10th Cir. 1994); *Blomquist v. Thomson*, 739 F.2d 545, 529 (10th Cir. 1984); *Briscoe,* 435 F.2d at 1053-54; 66

A.L.R. Fed. 750, Actionability, Under 42 U.S.C. § 1983; 69 A.L.R.4th 948 Elections: Validity of State or Local Legislative Ban on Write-in Votes (1990).

As the language of these decisions demonstrates, the Court's main concern is not with the right of the candidate to run for office but with the right of the voters to associate with that candidate and to cast their votes as they choose. *See Berg v. Egan*, 979 F.Supp. 330, 335 (E. Dist. Penn. 1997); *Browne v. Sabatina*, 1990 WL 191973 *1 (E.D. Penn. 1990). Because the right of the candidate to run for office and the right of the voters to vote for him or her are inextricably intertwined, courts construe a challenge to the exclusion of a candidate as one seeking to vindicate the rights of the voters as well. *See Anderson*, 460 U.S. at 787; *Bullock*, 405 U.S. at 143; *Hagelin*, 25 F.3d at 959; *Blomquist*, 739 F.2d at 529; *Berg*, 979 F.Supp. at 335; *Browne*, 1990 WL 191973 *1.[3]

While the right of a candidate to seek office has strong roots in the First Amendment, that right is not absolute. *Burdick*, 504 U.S. at 428. In general, states retain the power to regulate their elections and may impose reasonable restrictions on access to their ballots. *Id.*; *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, ----, 117 S.Ct. 1364, 1366, 137 L.Ed.2d 589 (1997) ("States may enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 549, 93 L.Ed.2d 514 (1986) ("the Constitution grants to the States a broad power to prescribe the 'Times, Places, and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices"); *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in

---

[3]Indeed, by refusing to certify Pearlman's candidacy, Secretary Gonzales has prevented him not only from seeking office but from voting for the candidate of his choice, presumably himself.

structuring elections." *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063. Thus, the Supreme Court has upheld "generally-applicable and evenhanded restrictions [on electoral candidate's] that protect the integrity of the electoral process itself." *American Constitutional Law Foundation, Inc. v. Meyer*, 120 F.3d 1092, 1097 (10th Cir. 1998) (citing *Anderson*, 460 U.S. at 788 n. 9).

Applying these principles, the Supreme Court and Tenth Circuit have upheld state laws which prohibit write-in voting altogether. *Burdick*, 504 U.S. at 433, 112 S.Ct. at 2063; *Coalition for Free and Open Elections*, 48 F.3d at 497.

The State of New Mexico, however, has chosen to allow the use of write-in voting in its general election. *See* NMSA 1-12-19.1 (1978) (quoted in full below). Further, Pearlman is not here challenging the constitutionality of the qualifying criteria contained in the State's write-in law. Cf. *Anderson v. Hooper*, 632 F.2d 116, 118-19 (10th Cir. 1980). Rather, Pearlman asserts that Secretary Gonzales wrongfully refused to certify his write-in candidacy. Cf. *State of New Mexico ex rel. Chavez v. Evans*, 79 N.M. 578, 446 P.2d 445, 449-53 (1968); *Briscoe,* 435 F.2d at 1053-54; *Berg*, 979 F.Supp. at 335. Given that the State permits write-in voting, the wrongful refusal to certify a qualified write-in candidate would constitute a violation of First Amendment rights. *See Briscoe,* 435 F.2d at 1053-54. In addition, if the refusal to certify was motivated by the intent to discriminate against the candidate, than the refusal would also constitute a violation of the Fourteenth Amendment right to equal protection. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Gamza,* 619 F.2d at 452; *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977); *Briscoe,* 435 F.2d at 1052; 66 A.L.R. Fed. 750 Actionability, Under 42 U.S.C. § 1983; 26 Am.Jur.2d Elections § 100 Jursidiction of Federal Courts (1996).

Thus, assuming the truth of Pearlman's pleadings, Secretary Gonzales' actions, if wrongful, would threaten to infringe on Pearlman's federally protected constitutional rights. The Court must therefore determine if Secretary Gonzales' actions were wrongful.

### b.     Secretary Gonzales' Decision and New Mexico's Election Laws

"As a starting point, it is useful to remember that until the late 1800's, all ballots cast in this country were write-in ballots." *Burdick*, 504 U.S. at 446 (Kennedy, J., dissenting); *see also* Note: The Right to Write-in: Voting and the First Amendment, 44 Hastings L.J. 727, 732 (1993). New Mexico has retained this traditional means of seeking elected office, subject to certain criteria set out in its election code. Secretary Gonzales concluded that Pearlman failed to meet these criteria  because: (1) he did not have a running mate for governor; and (2) as a registered member of a major political party, he could not be a candidate unless nominated in the primary.

The Secretary of State is the "chief election officer" of New Mexico. Section 1-2-1, N.M.S.A. 1978 (Cum.Supp.1982); *Weldon v. Sanders*, 99 N.M. 160, 655 P.2d 1004, 1008-1009 (1982). "The duties of the secretary of state, as chief election officer, are limited." *Weldon*, 655 P.2d at 1009. "The secretary of state is in the executive department. The power to enact legislation is vested in the Legislature, and this includes the power to enact statutes covering elections.  Although the secretary of state is the chief election officer, she cannot negate mandatory provisions of the Election Code. To allow the secretary of state to do so would violate the doctrine of separation of powers." *Id*. at 1008. Thus, while "the secretary may make rules and regulations 'pursuant to the provisions of' the Election Code," she cannot enforce policies or rules which have not been properly adopted by the State, as provided for by Statute. *Id*. at 1008-1009. Therefore, unless Secretary Gonales' decision is supported by the Election Code or properly promulgated elections rules, she has "acted beyond the scope of her duties, defined by the Constitution and the Election Code." *Id*. at 1009; *See State ex rel.*

*Van Schoyck v. Board of County Com'rs of Lincoln County*, 46 N.M. 472, 131 P.2d 278, 282 (1942). Thus, to determine whether Secretary Gonzales properly refused to certify Pearlman's candidacy, the Court must consider the statutory scheme created by the New Mexico Election Code.

New Mexico Election Code section 1-12-19.1 provides for write-in candidates in the general election. The statute provides, in its entirety, as follows:

> A. A person desiring to be a write-in candidate in a general election, a special election for United States representative or a statewide special election shall file with the proper filing officer a declaration of intent to be a write-in candidate. The declaration of intent shall be filed between 9:00 a.m. and 5:00 p.m. on the sixty-third day immediately preceding the election.
>
> B. The form of the declaration of intent shall be prescribed by the secretary of state and shall contain a sworn statement by the candidate that he is qualified to be a candidate for and to hold the office for which he is filing.
>
> C. At the time of filing the declaration of intent to be a write-in candidate, the write-in candidate shall be considered a candidate for all purposes and provisions relating to candidates in the Election Code [this chapter], including the obligation to report under the Campaign Reporting Act [1-19-25 to 1-19-36 NMSA 1978], except that he shall not be entitled to have his name printed on the ballot.
>
> D. The secretary of state shall, not less than ten days before the general election, certify the names of the declared write-in candidates to the county clerks of every county affected by such candidacy.
>
> E. No person shall be a write-in candidate in the general election who was a candidate in the primary election immediately prior to the general election.
>
> F. A vote for a write-in candidate shall be counted and canvassed only if:
>
> (1) the name written in is the name of a declared write-in candidate and shows two initials and last name; first name, middle initial or name and last name; first and last name; or the full name as it appears on the declaration of intent to be a write-in candidate and misspellings of the above combinations that can be reasonably determined by a majority of the members of the precinct board to identify a declared write-in candidate; and
>
> (2) the name is written in the proper office or entered upon the keyboard on the voting machine or on the proper line provided on a marksense ballot, absentee ballot

or emergency paper ballot for write-in votes for the office for which the candidate has filed a declaration of intent.

G. No unopposed write-in candidate shall have his election certified unless he receives at least the number of write-in votes as he would need signatures on a nominating petition pursuant to the requirements in Section 1-8-33 NMSA 1978.

H. A write-in vote shall be cast by writing in the name. As used in this section, "write-in" does not include the imprinting of any name by rubber stamp or similar device or the use of preprinted stickers or labels.

Section 1-12-19.1, N.M.S.A. 1978 (Cum.Supp.1982).

Of particular relevance to the instant case, section (D) of the statute provides that "[t]he secretary of state *shall*, not less than ten days before the general election, certify the names of the declared write-in candidates to the county clerks of every county affected by such candidacy." Presumably the Secretary of State has the authority to determine if the declaration of candidacy meets the requirements of the statute, but the Secretary has no other discretion in determining who is and is not a valid candidate. The duty to register a qualified candidate is mandatory. *See Weldon*, 655 P.2d at 1009; *State ex rel. Van Schoyck*, 131 P.2d at 282.

Further, section (E) provides that "[n]o person shall be a write-in candidate in the general election who was a candidate in the primary election immediately prior to the general election." This is what is referred to as a "sore loser" provision. *See Burdick*, 504 U.S. at 446 (Kennedy, J., dissenting); 26 Am.Jur.2d Elections § 277 (1996). Such provisions serve the important state interest of maintaining the integrity of the primary election process by preventing candidates who lost the primary from pursuing a write-in candidacy in the general election. The New Mexico write-in statute makes no other reference to primary election process. Cf. 26 Am.Jur.2d Elections § 277.

Primary elections are governed by New Mexico's Primary Election Laws, 1-8-1 to 1-8-17 N.M.S.A. 1978. Section 1-8-17 states that the Primary Election Laws apply "to major political party

nominations for all offices that are to be filled at the general election." Section 1-8-1 further provides that major political parties shall nominate their candidates for the general election in a primary. Section 1-8-13 states that the Governor's proclamation announcing the primary dates must include "the names of the major political parties participating in the primary election," and "the offices for which each political party shall nominate candidates." Section 1-1-9 of the Election Code defines a "major political party" as "any qualified political party, any of whose candidates received as many as five percent of the total number of votes cast at the last preceding general election for the office of governor, or president of the United States, as the case may be and whose membership totals not less than one-third of one percent of the statewide registered voter file on the day of the governor's primary election proclamation." 1-1-9 N.M.S.A. 1978.

In addition, the New Mexico Constitution, Article V, section 1 states, "[t]he governor and lieutenant governor shall be elected jointly by the casting by each voter of a single vote applicable to both offices." *See State of New Mexico ex rel. Chavez*, 446 P.2d at 451.

Finally, the New Mexico Constitution, Article II, section 8 requires "free and open" elections, without any interference with "the free exercise of the right of suffrage." *Gonzales v. Middle Rio Grande Conservancy District*, 106 N.M. 426, 744 P.2d 554, 556 (1987).

In the present case, Secretary Gonzales denied Pearlman's candidacy on the grounds that (1) he did not have the required running mate for Lieutenant Governor; and (2) as a registered member of a major political party, he could only be a candidate if nominated by the party. The first reason, while supported by law, is not supported by the facts. The second reason, while supported by the facts is not supported by the law.

As to the question of a running mate, Secretary Gonzales undoubtedly had the authority to deny Pearlman's first "Declaration" which failed to name a running-mate. *State of New Mexico ex rel.*

*Chavez*, 446 P.2d at 451. However, Pearlman filed a second, alternative declaration which did in fact name a joint candidate for lieutenant governor. Therefore, the denial of the second Declaration cannot be supported on this basis.

As to the question of Pearlman's ability to pursue a write-in candidacy though he is a registered member of the Green party, the Court will assume that Secretary Gonzales is correct that the Green Party is now a major political party in the State of New Mexico, as defined by statute. Regardless, nothing in the text of the write-in statute, Section 1-12-19, prohibits registered members of major parties from pursuing write-in candidacies. Section 1-12-19 only prohibits those individuals who actually were candidates in the primary from being write-in candidates in the general election. 1-12-19 N.M.S.A. 1978. The plain text of the statute does not support Secretary Gonzales' interpretation. Further, the specific inclusion of a provision barring individuals who were candidates in the primary supports the conclusion that no other limits were intended by the Legislature. *See Gonzales v. Middle Rio Grande Conservancy District*, 106 N.M. 426, 744 P.2d 554, 555 (1987) (in absence of specific statutory provision banning write-in candidates in district elections, such candidates were allowed); *Ostic v. Stephens*, 55 N.M. 497, 499, 236 P.2d 727, 728 (1951) (finding that the provision in the election law governing the election of city commissioners which states that write-in ballots could be used if no candidates qualified in the primaries supported the conclusion that write-in ballots could not be used if candidates did qualify: "Inclusio unius est exclusio alterius").

Moreover, no other provision of the New Mexico Election Code supports Secretary Gonzales' conclusion. While New Mexico could have adopted a statute stating that *all* candidates for the general election must be nominated, see 69 A.L.R.4th 948 Elections §6, it has not. Rather, it has adopted a statutory scheme requiring that all *major party candidates* be nominated in a primary. *See* 1-8-1, 1-8-13, and 1-8-17 N.M.S.A. 1978 (discussed above). Simply because Pearlman happens

to be a registered member of a major party does not make him *the party candidate* for office. *See Roberts v. Cleveland*, 48 N.M. 226, 149 P.2d 120, 121-22 (1944); *State ex rel. Van Schoyck*, 131 P.2d at 281; 26 Am.Jur.2d elections §261 (1996) (citing *Roberts*, 48 N.M. 226, 149 P.2d 120.)

Indeed, New Mexico courts have carefully distinguished between the right to be the *party nominee* for office and the right to be a *candidate* for office. *See Roberts*, 149 P.2d at 121-22; *State ex rel. Van Schoyck*, 131 P.2d at 281 (requirement that candidate file a nominating petition applies to anyone "desiring to become a candidate of any political party" or "seeking his party's designation as nominee for a particular office"). In *Roberts v. Cleveland, supra,* the Supreme Court addressed the constitutionality of the New Mexico statute requiring individuals to be registered with a party for a certain length of time before being eligible to be that party's nominee for political office. The plaintiff in *Roberts* asserted that the statute imposed an additional requirement on the eligibility for office of United States Senator, in violation of the United States Constitution. In rejecting this claim, the New Mexico Supreme Court distinguished between the right to run for office and the right to "become a candidate of a political party." *Roberts*, 149 P.2d at 121. "Every voter has a right to be a candidate for a public office if he [or she] possesses the qualifications required to fill the office. It does not necessarily follow that he [or she] can be the candidate of a particular political party." *Id*. As the *Roberts* Court recognized, the nominee of the political party is more than just a candidate; he or she is "a standard bearer who best represents the party's ideologies and preferences." 16A Am.Jur.2d Constitutional Law § 551 (1998). The State of New Mexico has a legitimate interest in insuring that the individual who is placed on the ballot as the party nominee has in fact affliated with the party and does in fact represent the party's ideals. *Roberts*, 149 P.2d at 121-22.

The *Roberts* Court went on to observe, however, that being the "party nominee" was not the only means available to the plaintiff in seeking elected office. "If he cannot fill the requirement so as

to be the candidate of the political party of his choice, he may still be a candidate at the general election by petition. The right of the voter to vote at the general election for whom he [or she] pleases cannot be limited. . . . It is not necessary, in order to preserve the rights of the voter at the general election, that the name of a candidate should be printed on the ballot unless he is a candidate of a political party. The right to be a candidate at the general election by the 'write in' method is provided for." *Id.* at 121-22; *see also Anderson v. Hooper*, 632 F.2d 116, 118-19 (10th Cir. 1980) (candidate who failed to meet declaration requirements for independent candidates in New Mexico was "limited to campaigning as a write-in candidate, and not as an Independent Candidate with her name on the ballot").

As these cases make clear, there is a significant difference between being the party nominee, with your name on the ballot next to your party's endorsement, and being a lone write-in candidate. It is therefore not surprising that the Secretary of State has in the past certified write-in candidates from major political parties. The only individuals prohibited from pursuing a write-in candidacy are those who were in fact candidates at the primary. Because Pearlman was not a candidate in the primary, nothing bars his write-in candidacy at the general election.

The reasons cited by Secretary Gonzales for declining Pearlman's candidacy are not supported by fact or law. Accordingly, Secretary Gonzales acted beyond the scope of her authority in refusing to certify a qualified candidate. *Weldon*, 655 P.2d at 1009; *State of New Mexico ex rel. Chavez*, 446 P.2d at 449-53; *State ex rel. Van Schoyck*, 131 P.2d at 282. As noted above, the failure to certify Pearlman's write-in candidacy implicates core First Amendment and equal protection rights. The Court next must consider whether Secretary Gonzales' actions here constitute a violation of those rights which is actionable under 42 U.S.C. § 1983.

      **c.**     **Actionability of Constitutional Violations Under 42 U.S.C. § 1983**

"[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional or statutory violations." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990) (citing *Baker v. McCollan*, 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 2692, 2694 n. 3, 61 L.Ed.2d 433 (1979)). To be actionable under § 1983, a violation of constitutional rights need not be willful or malicious; but the acts must have been under taken with whatever intent requirement is needed to violate the underlying constitutional right. *Id.*; *see also Williams v. Sclafani* 444 F.Supp. 906, *aff'd without op.* 580 F.2d 1046 (2nd Cir. 1978) (finding due process violation where electoral candidate justifiably relied on city board of elections advice regarding qualifying signatures, intent to deprive of constitutional rights not required); *Ury v. Santee*, 303 F.Supp. 119 (N.D. Ill. 1969) (failure to provide adequate voting facilities violation, intent not required); *League of Women Voters v. Fields*, 352 F.Supp. 1053 (E.D. Ill. 1973) (serious and widespread voter fraud allowed by election officials would constitute violation of right to vote, to fair election and to have vote count, even if not intentional).

To establish a violation of First Amendment associational rights, Plaintiff must produce evidence of intent to act. *See Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993) (discussing elements of § 1983 based on interference with First Amendment right of intimate association). More than mere negligence in the administration of the election must be shown but a malicious or invidious purpose is not required. *Gamza*, 619 F.2d at 452-54; *Browne v. Sabatina*, 1990 WL 191973 *1 (E.D. Penn. 1990).

In the present case, Plaintiff has plead facts which go beyond mere negligence to demonstrate and intentional act. Secretary Gonzales rejected Pearlman's application after presumably careful reflection and analysis. Though there is no evidence that Secretary Gonzales was motivated by a willful or malicious desire to deprive Pearlman of his constitutional rights, this is not necessary. It is

sufficient that Secretary Gonzales acted intentionally in denying Perlman's declaration, and did not merely fail to certify Pearlman's candidacy as a result of some administrative negligence. *See Griffin v. Strong*, 983 F.2d at 1546; *Gamza*, 619 F.2d at 452-54.

To establish a violation of the Fourteenth Amendment guarantee of equal protection of the laws, Plaintiff must prove more than just an intentional act. "[P]urposeful discrimination is an essential element of an equal protection violation." *Lewis*, 903 F.2d at 755 (citing *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986)). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. Rather, it implies that a decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Welsh v. City of Tulsa, Oklahoma*, 977 F.2d 1415, 1419 (10th Cir. 1992) (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (quotation marks omitted); *see also Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Gamza*, 619 F.2d at 452; *Sangmeister*, 565 F.2d at 465; *Burke v. Illinois State Board of Elections*, 1992 WL 43243 *2 (N.D. Ill. 1992).

In the present case, Plaintiff has pled that Secretary Gonzales and her predecessor have certified write-in candidates from past elections from other political parties, including at least one from the Democratic party, a major political party in the State. This is sufficient to establish a *prima facie* case of intentional discrimination based on political viewpoint, at least at this stage of the proceedings. *See Sangmeister*, 565 F.2d at 465 (evidence that county clerks consistently placed their own political parties at the top of the ballot sufficient to establish intentional, invidious discrimination in violation of the equal protection clause).

Thus, Plaintiff Pearlman has sufficiently pled facts which, if true, would establish that Secretary Gonzales has and continues to violate his First and Fourteenth Amendment rights, and

which would give rise to an actionable claim pursuant to 42 U.S.C. § 1983. The Court must now determine whether it can, consistent with the Eleventh Amendment and principles of federalism, grant the relief requested.

### 2. Eleventh Amendment Immunity

The Tenth Circuit recently outlined the parameters of Eleventh Amendment immunity as follows: "the [Supreme] Court has held that a citizen's suit against a state agency is barred by the Eleventh Amendment just as surely as if the suit had named the state itself. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Furthermore, it does not matter what form of relief a citizen might request in a suit against a state agency; even a suit solely for prospective injunctive relief when it is brought against a state agency qua state agency is barred by the amendment. *See Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982). Finally, when a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the 'real party in interest' is the state, and the suit is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663, 94 S.Ct. 1347. (1187)." *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1188 (10th Cir. 1998).

However, as the Tenth Circuit explained, an individual may obtain relief against a state actor in federal court through "the so-called Ex parte Young 'exception' to the Eleventh Amendment, although in nominal form the rule is not an 'exception' because the citizen's suit is not against the state, but rather it is a suit against a state official.  In such a suit, when a party seeks only prospective equitable relief--as opposed to any form of money damages or other legal relief--then the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States. *See Ex parte Young*, 209 U.S. 123, 158- 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Coeur d'Alene Tribe*, 117 S.Ct. at 2043 (O'Connor, J., concurring) ('The Young doctrine recognizes

that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity.')" *Id.*; *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (reaffirming that state officers who are violating a federal law may always be sued for purely injunctive relief--"capacity" and "party in interest" are irrelevant.)[4]

The Ex parte Young doctrine "has its limits." *Id.* "First, federal courts have no jurisdiction to entertain a suit that seeks to require the state official to comply with state law--only allegations of violations of federal law are sufficient to come within the Ex parte Young rule. *See Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900 ('[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law....  We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.'). Second, the doctrine will not go so far as to allow federal jurisdiction over a suit that seeks to redress past wrongs--only ongoing violations are covered. *See Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ('Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past....'). Third, the doctrine does not allow a federal court to declare past state conduct unconstitutional when the only purpose for such a declaratory judgment would be its res judicata effect in a subsequent state-court proceeding; such a declaration would have the effect of adjudicating the liability issues in a damages action against the state even though a direct federal suit for damages would be barred by the Eleventh Amendment. *See Green*, 474 U.S. at 73, 106 S.Ct. 423. And fourth, although the doctrine will allow injunctive relief

---

[4]"This rationale, of course, created the 'well-recognized irony' that an official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment." *Pennhurst*, 465 U.S. at 105.

that might have a substantial ancillary effect on a state treasury, it does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable. *See Edelman*, 415 U.S. at 668, 94 S.Ct. 1347 1188-89." *Id.* at 1188-89.

In the case at bar, Plaintiff Pearlman has pled a classic Ex part Young case. Pearlman asserts that Secretary Gonzales has exceeded her authority thereby violating his federal constitutional rights.[5] He alleges an ongoing constitutional violation and seeks only prospective injunctive relief in the form of a writ of mandamus. Under traditional Eleventh Amendment jurisprudence, this Court could properly grant the relief requested. But tradition is no longer what it was.

Although the Supreme Court does not "question the continuing validity of the Ex parte Young doctrine," *see Coeur d'Alene Tribe*, 117 S.Ct. at 2034, the recent decisions in *Coeur d'Alene Tribe* and *Seminole Tribe* "mark a significant narrowing of the scope" of the doctrine. *ANR Pipeline Co.*, 150 F.3d at 1189 (citing *V-1 Oil Co. v. Utah State Dep't of Public Safety*, 131 F.3d 1415, 1421 n. 2 (1997)). Thus, the Tenth Circuit recently stated, "[w]e read *Coeur d'Alene Tribe* as imposing an important new requirement on federal courts as part of the Ex parte Young analysis. In light of *Coeur d'Alene Tribe*, federal courts must examine whether the relief being sought against a state official 'implicates special sovereignty interests.' If so, we must then determine whether that requested relief is the 'functional equivalent' to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment. In the end, we must not extend the Ex parte Young doctrine to allow

---

[5]The fact that the paramaters of Secretary Gonales' authority are defined by State statute does not mean that Pearlman seeks an injunction to enforce state created rights in violation of the holding of *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900. Rather, Pearlman asserts a violation of federal constitutional rights which can only be remedied by requiring Secretary Gonzales to carry out her duties in accordance with the law. *See Duran v. Carruthers*, 885 F.2d 1485, 1489-90 (10th Cir. 1989). On the other hand, this case cannot be brought under the *ultra vires* exception to the Eleventh Amendment because that exception does not permit a federal court to order a state official to take affirmative action, rather than merely to cease and desist the unconstitutional actions alleged. *See Painter v. Shalala*, 97 F.3d 1351, 1358 (10th Cir. 1996).

a suit for prospective equitable relief when that relief would be just as intrusive, if not more so, into core aspects of a state's sovereignty." *Id.* at 1190.

Applying this standard, the *ANR Pipeline* Court held that it could not grant prospective injunctive relief regarding the manner in which a state tax was calculated. *Id.* at 1191. The Court observed, "[w]e do not doubt . . . that a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty. Indeed, where it is possible to imagine a state government continuing to maintain its sovereignty despite the lack of any ownership of land, cf. *Coeur d'Alene Tribe*, 117 S.Ct. at 2041, it is impossible to imagine that a state government could continue to exist without the power to tax." *Id.* at 1193.

In the case at bar, no serious argument can be made that the management of the election for the highest elected official of the state does not "implicate special sovereignty interests" of the State of New Mexico. *See Coeur d'Alene Tribe*, 521 U.S. at ----, 117 S.Ct. at 2040. Indeed, to paraphrase the Tenth Circuit, it is impossible to imagine a state that did not retain the power to manage the election of its own governor. Although Plaintiff Pearlman follows a long and valued tradition in asking a federal court to vindicate his fundamental constitutional rights, this Court cannot grant the relief requested as it "would be just as intrusive, if not more so, into core aspects of a state's sovereignty" as other forms of relief barred by the Eleventh Amendment. *ANR Pipeline Co.*, 150 F.3d at 1190.

The proper venue for the resolution of this dispute is not with the federal courts but in the New Mexico Supreme Court. This Court understands that the New Mexico Supreme Court has already twice declined to hear Pearlman's Complaint. Because the orders denying review did not state any reasons, this Court does not know if the New Mexico Supreme Court ever reviewed the merits

of the claim. Regardless, within our federalist system of governance, all that is appropriate for this Court to do is to urge that the New Mexico Supreme Court reconsider the matter.

**CONCLUSION**

This Court does not lightly turn its back on what appears to be an ongoing violation of Plaintiff Pearlman's federal constitutional rights. But neither can this Court lightly intervene in the State of New Mexico's election of its highest executive officers. Although it is unable to grant him any relief, this Court appreciates the efforts of Plaintiff Pearlman to involve himself in the political process. For if, as Justice Brandeis said, "[t]he greatest menace to freedom is an inert people," then the greatest asset to a democracy is the individual who becomes personally involved. (Quote from *Whitney v. California*, 274 U.S. 357, 375 (1927)).

**IT IS THEREFORE ORDERED** that Petition for Writ of Mandamus **[Doc. No. 1]** is hereby **DENIED** and Plaintiff's Complaint is hereby **DISMISSED** with prejudice.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
    Daniel Pearlman, *pro se*

Attorneys for Defendant:
    Maria DeAnda